Lddeling, C. J.
The plaintiff alleges that in July, 1872, being in the city of New Orleans, and desiring to go to her plantation, in the parish of Poin'te Coupee, she went on board the steamboat Governor-Alien, a packet engaged in the business of common carrier of passengers, and plying between New Orleans and Vicksburg, and that she was refused a berth in the cabin and denied the right to take her meals at the table with the other passengers; and that she was forced to remain in a small compartment in the rear of the boat, without the common convenience granted to other passengers, solely on the ground that she is a colored person. She alleges that she is well educated, resided in Paris, Prance, several years, and that the treatment above mentioned is not only a gross infraction of her rights under the constitution and laws of the United States and of this State, but was also an indignity to her personally, which shocked her feelings and caused her mental pain, shame and mortification. She prays for $25,000 actual damages and $50,000 exemplary damages.
The defendant filed an exception, in which he pleaded want of jurisdiction in the State court ratione materia, as, he alleges, “ the matters set up are admiralty matters, over which the United States Court alone has jurisdiction.” This plea was overruled, and the other parts of the exception were referred to the merits. In his answer the defendant reiterates the objections urged in his exception. They are as follows r
First — A general denial.
Second — That the steamer Governor Allen was on the twentieth July, 1872, and had been some years before, enrolled and licensed under the laws of the United States to pursue the coasting trade, and was in the month of July, 1872, actually engaged in commerce and navigation between the ports of New Orleans and Vicksburg, in the State of Mississippi, and that the 13th article of the Constitution of the State of Louisiana, and the act No. 38 of 1869, of said State, so far as they attempted to regulate steamboats, are in conflict with article 1, section 8, of the constitution of the United States, giving Congress exclusive power to regulate commerce among the several States, and are consequently null and void.
Third — That he has by law a right to regulate and prescribe rules for the accommodation of passengers on the steamer Governor Allen; that the boat is private property, and does not belong to the public, and any law attempting to prevent him from regulating said steamboat to the best advantage, and for the interest of her owner, would be in violation of article 14, section 1, of the amendment to the constitution of the United States, prohibiting any State from depriving any person of his property without due process of law.
Fourth — That there is now and always has been a well known regu *3 lation on tli© steamer Governor Allen, as well as all other boats engaged in commerce and navigation between the port of New Orleans and the various ports and places on the Mississippi and tributary rivers; that colored persons are not placed in the same cabin as white persons, or allowed to eat at the same table With them; that this regulation is reasonable, usual and customary, and is made for the protection of their business, and was well known to the plaintiff in this cause in July, 1872, and had been known to her for many years previous.
Fifth — That the steamer Governor Allen has a cabin called the Bureau for exclusive accommodation of colored persons; provided with state rooms and all the conveniences of the cabin appropriated for the exclusive use of white persons; that plaintiff was tendered a state room in said bureau cabin appropriated for thq exclusive use of colored persons, according to the well known rules and regulations of the boat; and instead of accepting it, took a seat iu the recess of the boat in the rear of the ladies’ cabin, where she 'was offered a stretcher, which she declined.
Sixth — That she was distinctly informed before she came on the boat by the cleric to a person who applied to him on her behalf that she could not be accommodated in the cabin for white persons, but would be put in the bureau or cabin for colored persons, and that she came on the boat with that understanding and without complaint, and only paid $5 — the amount charged in said cabin — and that the other passengers are charged §7 to Hermitage Landing.
There was judgment in favor of the plaintiff for one thousand dollars, and the defendant has appealed.
We think the exception to the jurisdiction of the court was properly overruled. See 20 An. 432, and 22 How. 244.
The evidence sustains the material allegations of the petition. The defendant himself, a witness in the case, states: “I would not have given her a room if they had not all been taken.” He had previously stated that he did not know if there was a vacant room — that he thought there were unoccupied berths in some of the rooms. When asked if the reason for refusing to give her a berth in the cabin was on account of her being a colored person, he answered : tl Yes, sir, as being contrary to the rules of the boat.”
Two constitutional questions are presented for solution : Is the act of 1869, No. 38, in conflict with article 1, section 8 of the constitution of the United States? Is it in conflict with article 14, section 1, of said constitution ?
It is insisted that act No. 38, of the General Assembly passed in *4 1869, violates article 1, section 8, of the constitution of the United States, because it undertakes to regulate commerce.
This is a mistake. The act does not make any regulation of commerce. The act was passed to carry into effect the provisions of article 13 of the State constitution, which declares that “ all persons shall enjoy equal rights and privileges upon any conveyance of a public character; and all places of business or public resort, or for which a license is required by either State, parish or municipal authority, shall be deemed places of a public character, and shall be open to the accommodation and patronage of all persons without distinction or discrimination on account of race or color.” The act contains five sections. The first and fourth alone are applicable to this case.
The first section provides “that all persons engaged within this State in the business of common carriers of passengers shall have the right to refuse to admit any person to any railroad cars, street ears, steamboats or other water crafts, stage coaches, omnibuses or other vehicle, or to expel any person therefrom after admission, when such person shall, on demand, refuse or neglect to pay the customary fare, or when such person shall be of infamous character, or shall be guilty, after admission to the conveyance of the carrier, of gross, vulgar or disorderly conduct, or who shall commit any act tending to injure the business of the carrier, prescribed for the management of his business after such rules and regulations shall have been made known ; provided, said rules and regulations make no discrimination on account of race or color; and shall have the right to refuse any person admission to such conveyance when there is not room or suitable accommodations j and except in cases above enumerated, all persons engaged in the business of common carriers of passengers are forbidden to refuse admission to their conveyance, or to expel therefrom any person whomsoever.”
The fourth section provides “ that for a violation of any of the provisions of the first and second sections of this act, the party injured shall have the right of action to recover any damages, exemplary as well as actual, which he may sustain, before any court of competent jurisdiction.”
The first section forbids those engaged in the business of common carriers of passengers from discriminating against the passengers on account of race or color, and that is the substance of the section so far as it is applicable to this case. It was enacted solely to protect the newly enfranchised citizens of the United States, within the limits of Louisiana, from the effects of prejudice against them. It does not, in auy manner, affect the commercial interest of any State or foreign nation or of the citizens thereof.
*5 The objection that the act No. 38 violates section 1 of article 14 is utterly untenable. No one is deprived of life, liberty or property, without due process of law by said statute. The position that because one’s property can not be taken without due'process of law, therefore a common carrier can conduct his business as he chooses, without reference to the rights of the public, is so illogical that it is only necessary to state it to expose its fallacy. “ The rights and responsibilities of the common carrier may be briefly stated thus: He is bound to take the goods of all who offer, if he be the carrier of goods, and the persons of all who offer, if he be a carrier of passengers; to take due care and to make due transport and due delivery of them. He has a lien on the goods which he carries, and on the baggage of the passengers for his compensation.
He is liable for all loss or injury to the goods under his charge, unless it happens from the act of God or from, the public enemy.” Par- ■ sons’ Mercantile Law, 207.
If he be a common carrier of passengers he must receive all who offer, carry them over the whole route, demand only the usual compensation, and treat all alike, unless there be actual or sufficient reason for the distinction, such as the filthy appearance, dangerous condition, or misconduct of a passenger ; and for failure in any of these particulars he is responsible to the extent of^the damage occasioned thereby, including pain or injury to the feelings. Chamberlain v. Chandler, 3 Mason, 142; 5 La. Keene v. Lizardi, 431; Black v. Bannerman, 10 An. 1; 1 McLean 550; 3 McLean, 24 Parsons’ Mercantile Law, 207; 3 Kent ed. 1832, 160.
In Keene v. Lizardi, Judge Porter, as the organ of the court, quoted the following language of Judge Story, as expressing the ideas of the court on this subject. “In respect to passengers, the case of the master is one of peculiar responsibility and delicacy. The contract with him is not for mere ship room, and personal existence on board, but for reasonable food, comforts, necessaries and kindness. It is a stipulation not for toleration merely, but for respectful treatment, for the decency of demeanor, which constitutes the charm of social life, for that attention which mitigates evils without reluctance, and that promptitude which administers aid to distress. In respect to females it proceeds yet further ; it includes an implied stipulation against general obscenity, that immodesty of approach which borders on lasciviousness, and against that wanton disregard of the feelings, which aggravates every evil, and endeavors by the excitement of terrors and cool malignancy of conduct to inflict torture on susceptible minds.”
In truth the right of the plaintiff to sue the defendant for damages would be the same, whether act No. 38 existed or not; but the act is in perfect; accord with the constitution of the United States.
*6 “ All persons born or naturalized in tbe United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, etc.” -Fourteenth amendment of the constitution of the United States.
It is settled, in this State at least, that colored persons now have all the civil and political rights which white persons enjoy. See succession of Caballero and Hoss & Elder v. Hart et al. 25 An.
Mrs. Decuir was denied the right to go into the ladies’ cabin. She was compelled to remain in a small compartment back of the ladies’ cabin, or to go into the “ colored bureau,” and to take her meals there also. If she had been a white lady, it will not be denied that she would have had just cause for complaint. Under the constitution and laws of the United States and of this State, she was entitled to the same rights and privileges, while upon the defendant’s boat, which were possessed and exercised by white persons. In a recent case, Chief Justice Beck, of Iowa, held the following language, which we adopt: “These rights and privileges rest upon the equality of all before the law, the very foundation principle of our government, If the negro must submit to different treatment, to accommodations inferior to those given to the white ¿nan, w.hen transported by public carriers, he is deprived of the benefits of this very equality. His contract would not secure him the same privileges and the. same rights that a like contract made with the same party, by his white fellow, citizen, would bestow upon the latter.” Cager v. Northwestern Union Packet Company, American Law Register for March, 1874.
The defendant relies also upon the fact that, by regulation and the established course of business on steamboats, colored persons were not received as cabin passengers, and not allowed the use of the cabins; that they have the right to make regulations for the comtort and convenience of the passengers, and that said regulation was reasonable.
That the common carrier may make reasonable rules and regulations for the government of the passengers on board his boat or vessel is admitted, but it can not be pretended that a regulation, which is founded on prejudice and which is in violation of law, is reasonable.
The appellee has not asked for an increase of the judgment.
It is therefore ordered and adjudged that the judgment of the district court be affirmed, with costs of appeal.